**DAVID J. HOLDSWORTH (4052)**
Attorney for Plaintiff
9125 South Monroe Plaza Way, Suite C
Sandy, UT  84070
Telephone (801) 352-7701
Facsimile (801) 567-9960
david_holdsworth@hotmail.com

IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF UTAH

NORTHERN DIVISION

| | | |
|---|---|---|
| HOEUN CHEA, | : | **FIRST AMENDED COMPLAINT** |
| | : | **(JURY TRIAL DEMANDED)** |
| Plaintiff, | : | |
| | : | |
| v. | : | |
| | : | |
| IHC HEALTH SERVICES, INC. d.b.a. | : | |
| INTERMOUNTAIN HEALTHCARE, | : | Civil No. 1:21-cv-00073-JCB |
| | : | |
| Defendant. | : | Hon. Jared C. Bennett |

COMES NOW the Plaintiff, Hoeun Chea, complains of Defendant IHC Health Services, Inc. d.b.a. Intermountain Healthcare, demands trial by jury, and as and for causes of action, alleges as follows:

**JURISDICTION AND VENUE**

1.      This Court has jurisdiction over the instant case pursuant to federal question — namely, the interpretation and application of Title VII of the Civil Rights Act of 1964, as amended, which provides that it is unlawful to discriminate

against an employee in his employment on the basis of his race, color, national origin, and sex, and to retaliate against an employee for engaging in protected activity.

  2. Venue in this Court is proper in that the causes of action alleged herein arose in the Federal District of Utah, and/or where Plaintiff worked is located in the State of Utah, and/or the employment records relevant to Plaintiff's claim may be found in the State of Utah, and/or the Defendant resides in the State of Utah.

### EXHAUSTION OF ADMINISTRATIVE PROCESSES AND REMEDIES

  3. On or about September 30, 2020, Plaintiff filed a Charge of Discrimination with the Utah Labor Commission and with the U.S. Equal Employment Opportunity Commission ("EEOC") in which he alleged that Defendant had discriminated against him based on his race, color, national origin, and sex, and had unlawfully retaliated against him.

  4. Plaintiff filed his Charge of Discrimination within 180/300 days from the last date of alleged harm.

  5. On or about February 17, 2021, the EEOC issued Plaintiff a Notice of Right to Sue.

  6. Mr. Chea filed his civil action within 90 days of receipt of such Right to Sue letter.

7. The Court may consider for its determination all discrete actions that occurred between 180/300 days prior to the date of Plaintiff's filing of his Charge of Discrimination of September 30, 2020 and all non-discrete actions that occurred prior to that 180/300 date, which continued on past that date. The Court may treat all other discrete actions occurring prior to that date as being untimely for purposes of relief. However, the Court may give evidence of such events weight for evidentiary purposes. Thus, all jurisdictional requirements have been met as required by Title VII of the Civil Rights Act of 1964, as amended.

## PARTIES

8. Hoeun Chea is a citizen of the United States and, at all times relevant hereto, was a resident of the State of Utah.

9. IHC Health Services, Inc. d.b.a. Intermountain Healthcare (hereinafter "IHC") is an "employer" within the meaning of Title VII which does business in Salt Lake County in the State of Utah.

## STATEMENT OF FACTS

10. Petitioner incorporates by this reference all allegations listed in paragraphs 1 through 9 above as if alleged in full herein.

11. Plaintiff alleges that, on or about November 2, 2015, Defendant hired him to work as a Material Handler 2 at the IHC Supply Chain Center located at 7302 Bingham Junction Blvd, Midvale, UT 84047.

12. Plaintiff alleges that he is of the Southeast Asian race, is dark in skin color, is of Cambodian national origin and is male.

13. Plaintiff alleges that, because of his race, color, national origin, and sex, Defendant subjected him to disparate treatment and adverse action.

14. Plaintiff alleges his supervisors subjected him to disparate treatment.

15. Plaintiff alleges that his supervisor, Ben Hunter, had singled him out and treated him differently than other employees.

16. Plaintiff alleges that another supervisor, Joseph Brinkerhoff ("Brinkerhoff"), had also singled him out and treated him differently than other employees.

17. Plaintiff alleges that, during his employment, he took pride in his job and he had exemplary performance. He alleges he volunteered to help wherever possible so that other coworkers would not have to stay late. He alleges that such efforts were never acknowledged or appreciated, and were, instead, neglected or even punished.

18. For example, Plaintiff alleges that, during his employment, he made an effort to correct a practice called "cherry picking", which involves employees in the bulk department going through labels to get the "good" tags. Plaintiff alleges that his supervisor, Brinkerhoff, warned him against cherry picking, but allowed other Caucasian and email employees, such as Deyon Larson ("Larson"), to cherry pick without any consequences.

19. Plaintiff alleges that, during his employment for the previous four years, he had been in the top three employees for weight picked and the top three for number of picks.

20. Plaintiff also alleges that Dora _____, a coworker, and he consistently picked over 400 picks in a shift, while the other employees in the bulk department picked only about 200 picks in a shift. Plaintiff alleges that his supervisor called both Dora and him into the office and warned them about talking too much, even though they picked far more picks than other employees, but other Caucasian, white and American national origin employees were not disciplined for talking too much.

21. Plaintiff alleges he complained to his supervisor, Brinkerhoff, and "T", the manager, about other employees not being disciplined for talking too much,

even though they were picking fewer picks in a shift that Plaintiff and was told by "T" to not complain but to, "Just worry about yourself."

22. Plaintiff alleges that, during one shift, he and a Caucasian, white and American national origin coworker named Terrance picked over 400 picks each while they talked during their shift. Plaintiff picked 442 picks and Terrance picked 402 picks. During a "huddle" the next day, Brinkerhoff announced that Terrance had picked well over 400 picks the night before, but never mentioned Plaintiff's efforts, which exceeded Terrance's picks.

23. Plaintiff alleges that he complained to "T" about this slight, the manager, and was told that the manager would talk to Brinkerhoff.

24. Plaintiff alleges that, after he complained to "T", the manager, Brinkerhoff announced that a Caucasian, white and American national origin coworker by the name of Trevor had picked the heaviest weight of 12k pounds and the highest picks of 200 the day before, but failed to mention that Plaintiff had picked 13k pounds and 300 picks the day before.

25. Plaintiff alleges such actions were discriminatory.

26. Plaintiff alleges that he had reported his immediate supervisor to Human Resources for engaging in favoritism and discrimination towards him.

Case 1:21-cv-00073-TS   Document 9   Filed 08/12/21   PageID.28   Page 7 of 20

27. Plaintiff alleges his complaints were never addressed by company management.

28. Plaintiff alleges that, following such complaint to Human Resources, his supervisor began to indicate to Plaintiff that Plaintiff had a bad attitude and noted such on his yearly review.

29. Plaintiff alleges that, during his employment, and after he made the above-referenced complaints, he was scolded for things other Caucasian, white and American national origin and female employees had done wrong, but other such employees were treated differently and more favorably than he was treated.

30. Plaintiff alleges that, during his employment, a female coworker, Larson, frequently made comments that, because of his horoscope sign (Scorpio), he must be sexually hyperactive.

31. Plaintiff alleges that he complained to his supervisor about this coworker's sexually related comments, to no avail.

32. Plaintiff alleges that he also reported such comments to Stephanie McEwens, an Human Resources representative.

33. Plaintiff alleges that, for months prior to his termination, there had been rumors circulating around the workplace that the coworker whom he had reported

to the Human Resources representative for sexually harassing him was trying to get him fired.

34. Plaintiff alleges that such rumors can be corroborated by his coworkers.

35. As alleged above, Plaintiff alleges that Defendant treated him less favorably than it treated similarly situated non-minority workers.

36. Plaintiff alleges that his immediate supervisor, Brinkerhoff, and the female coworker, Larson, whom he had complained against, conspired together, during after work hours, on brainstorming ways to get him fired.

37. Plaintiff alleges that, on December 5, 2019, Defendant terminated his employment. Plaintiff alleges that Defendant terminated his employment in retaliation for his complaints and engaging in protected activity.

38. Thus, Plaintiff alleges that, on or about November 14, 2019, Defendant suspended him for an altercation which had occurred over six months previously and had been dealt with at the time of the occurrence by his immediate supervisor and one of the leads.

39. Plaintiff alleges that, after he complained, IHC, Brinkerhoff and Steven Brown ("Brown"), suspended him for an incident (an altercation) that had happened six months earlier and for which he had already been disciplined.

40. Plaintiff alleges that, on or about November 14, 2019, the Human Resources representative was not going to suspend him, but his immediate supervisor insisted that the company should suspend him.

41. Plaintiff alleges that Defendant has discriminated against him based on his race, color, national origin, and gender.

42. Plaintiff also alleges that Defendant has retaliated against him for engaging in protected activity, in violation of Title VII of the Civil Rights Act of 1964, as amended.

43. Plaintiff alleges that, soon after he complained, IHC terminated his employment because he had allegedly brought a gun to the workplace, which was completely false, and, therefore, pretextual.

44. Plaintiff alleges that the female coworker against whom he had complained and his supervisor to whom he had complained worked together to get him fired.

45. Plaintiff alleges such treatment and termination has caused him loss, injury and damage.

## CAUSES OF ACTION

### FIRST CAUSE OF ACTION
### DEFENDANT DISCRIMINATED AGAINST PLAINTIFF
### ON THE BASIS OF HIS RACE, COLOR, AND NATIONAL ORIGIN

46. Plaintiff incorporates by this reference all allegations listed in paragraphs 1 through 45 above as if alleged in full herein.

47. In order to state a claim of discrimination based on race, color and national origin, Plaintiff must allege facts which establish, or tend to establish, that: (1) he is a member of a protected class; (2) he was qualified for the position he held; (3) Defendant subjected him to an adverse employment action; and (4) the circumstances surrounding the adverse action give rise to an inference of discrimination on the basis of race, color and national origin. *See, generally, McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 802 (1973).

48. Plaintiff is of Southeast Asian race, dark color and Cambodian national origin, and, therefore, a member of protected classes.

49. Plaintiff's allegations satisfy the first element of the prima facie case.

50. Plaintiff alleges he was qualified for the position he held in that he successfully performed his job for several years.

51. Plaintiff's allegations satisfy the second element of the prima facie case.

52. Plaintiff alleges he suffered adverse actions when Defendant suspended him and then terminated his employment.

53. Plaintiff's allegations satisfy the third element of the prima facie case.

54. Plaintiff alleges that the circumstances surrounding his suspension and termination give rise to the inference of discrimination on the basis of race, color and national origin. Potential circumstances that give rise to an inference of discrimination include: (1) disparate treatment which, but for the employee's protected trait, would be different, *International Union v. Johnson Controls, Inc.,* 499 U.S. 187, 200 (1991); or (2) evidence that the protected trait actually motivated the employer's decision. *Phillips v. Martin Marietta Corp.,* 400 U.S. 542, 544 (1971).

55. As alleged above, Plaintiff alleges that Defendant treated him less favorably than it treated similarly situated non-minority workers.

56. Plaintiff alleges that, during his employment, a female coworker frequently made comments such as that, because of his horoscope sign (Scorpio), he was sexually hyperactive.

57. Plaintiff alleges that he complained to his supervisor about this coworker's comments, to no avail.

58. Thus, Plaintiff alleges that Defendant terminated his employment because of his race, color and national origin.

59. Plaintiff alleges that the female coworker against whom he had complained and his supervisor to whom he had complained worked together to get him fired.

60. Plaintiff alleges that, soon after he complained, IHC suspended him for an incident that had happened six months earlier, which had already been fully resolved.

61. Plaintiff alleges that, soon after he complained, IHC terminated his employment because he had allegedly brought a gun to the workplace, which was completely false, and, therefore, pretextual.

62. Plaintiff's allegations establish the fourth element of a prima facie case of discrimination based upon race, color and national origin.

63. Plaintiff's allegations state a prima facie case of discrimination based on race, color and national origin.

64. On information and belief, Plaintiff alleges that Defendant will assert it terminated Plaintiff for insubordination. Plaintiff alleges such reasons are pretextual in that: (a) the reason Defendant gave or may give for the termination is factually false; and (b) to the extent his complaints and requests may have caused any workplace concerns, he was well within his rights to complain, and, had Defendant

responded in a more constructive manner, it would have reduced or eliminated any workplace concerns and preserved Plaintiff's employment.

## SECOND CAUSE OF ACTION
## DEFENDANT DISCRIMINATED AGAINST PLAINTIFF
## ON THE BASIS OF HIS GENDER

65. Plaintiff incorporates by this reference all allegations listed in paragraphs 1 through 64 above as if alleged in full herein.

66. In order to state a claim of discrimination based on gender, Plaintiff must allege facts which establish, or tend to establish, that: (1) he is a member of a protected class; (2) he was qualified for the position he held; (3) Defendant subjected him to an adverse employment action; and (4) the circumstances surrounding the adverse action give rise to an inference of discrimination on the basis of gender. *See, generally, McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 802 (1973).

67. Plaintiff is a male, of Southeast Asian race, dark color and Cambodian national origin, and, therefore, a member of protected classes.

68. Plaintiff's allegations satisfy the first element of the prima facie case.

69. Plaintiff alleges he was qualified for the position he held.

70. Plaintiff's allegations satisfy the second element of the prima facie case.

13

71. Plaintiff alleges he suffered adverse actions when Defendant suspended him and then terminated his employment.

72. Plaintiff's allegations satisfy the third element of the prima facie case.

73. Plaintiff alleges that the circumstances surrounding his suspension and termination give rise to the inference of discrimination on the basis of gender. Potential circumstances that give rise to an inference of discrimination include: (1) disparate treatment which, but for the employee's protected trait, would be different, *International Union v. Johnson Controls, Inc.,* 499 U.S. 187, 200 (1991); or (2) evidence that the protected trait actually motivated the employer's decision. *Phillips v. Martin Marietta Corp.,* 400 U.S. 542, 544 (1971).

74. Plaintiff alleges that Defendant treated him less favorably than it treated similarly situated non-minority and female workers.

75. Plaintiff alleges that, during his employment, a female coworker frequently made comments such as that, because of his horoscope sign (Scorpio), he was sexually hyperactive.

76. Plaintiff alleges that he complained to his supervisor about this coworker's comments, to no avail.

77. Thus, Plaintiff alleges that Defendant terminated his employment because of his gender.

78. Plaintiff alleges that the female coworker against whom he had complained and his supervisor to whom he had complained worked together to get him fired.

79. Plaintiff alleges that, after he complained, IHC suspended him for an incident that had happened six months earlier.

80. Plaintiff alleges that, soon after he complained, IHC terminated his employment because he had allegedly brought a gun to the workplace, which was completely false, and, therefore, pretextual.

81. Plaintiff's allegations establish the fourth element of a prima facie case of discrimination based upon gender.

82. Plaintiff's allegations state a prima facie case of discrimination based on gender.

83. On information and belief, Plaintiff alleges that Defendant will assert it terminated Plaintiff for insubordination. Plaintiff alleges such reasons are pretextual in that: (a) the reason Defendant gave or may give for the termination is factually false; and (b) to the extent his complaints and requests may have caused any workplace concerns, he was well within his rights to complain, and, had Defendant

responded in a more constructive manner, it would have reduced or eliminated any workplace concerns and preserved Plaintiff's employment.

### THIRD CAUSE OF ACTION
### DEFENDANT RETALIATED AGAINST PLAINTIFF

84. Plaintiff incorporates by this reference all allegations listed in paragraphs 1 through 83 above as if alleged in full herein.

85. In order to state a claim of retaliation, Plaintiff must allege facts which establish, or tend to establish, that: (1) he engaged in protected opposition to discrimination; (2) contemporaneous with or subsequent to the protected activity, Defendant subjected him to an adverse employment action; and (3) there is a causal connection between the protected activity and the adverse employment action.

86. Plaintiff alleges that he engaged in a protected activity. Employees can engage in protected activity in several ways. One way is by voicing opposition about events made unlawful by the statutory non-discrimination laws. The Tenth Circuit has held that, although no magic words are required, to qualify as protected opposition, the employee must convey to the employer his or her concern that the employer has engaged in a practice made unlawful by [the anti-discrimination statutes]". *Hinds v. Sprint/United Mgmt. Co.,* 523 F.3d 1187, 1203 (10th Cir. 2008).

87. In this case, Plaintiff alleges that he engaged in protected activity by reporting what he, in good faith, believed constituted discrimination on the basis of

race, color, national origin, and/or gender, and by reporting supervisors and coworkers which he, in good faith, believed were violating the Title VII.

88. Plaintiff's allegations satisfy the first element of a prima facie case.

89. As set forth above, immediately after Plaintiff engaged in the protected activity, Defendant took adverse employment actions against him.

90. In regards to retaliatory adverse action, the courts have decided that adverse treatment includes any act that might have dissuaded a reasonable worker from making or supporting a charge of discrimination. *Rochon v. Gonzales,* 438 F.3d 1210, 1211 (D.C. Cir 2006).

91. On November 14, 2019, Defendant suspended Plaintiff.

92. On December 5, 2019, Defendant terminated Plaintiff's employment.

93. Plaintiff's allegations satisfy the second element of a prima facie case.

94. Plaintiff alleges a causal connection existed between the adverse action and the protected activity. The Civil Rights Act requires Plaintiff to show that, "but for" his engaging in the protected activity, the employer would not have taken the

adverse employment action. *University of Tex. Southwest. Med. Center v. Nassar,* 133 S.Ct. 2517, 2525 (2013).

95. Plaintiff alleges that, with the short temporal proximity at issue, such supports the proposition that, had he never complained, Defendant would not have terminated his employment.

96. Plaintiff's allegations satisfy the third element of a prima facie case of retaliation.

97. Plaintiff's allegations state a prima facie case of retaliation.

98. On information and belief, Plaintiff alleges that Defendant will assert that it terminated Plaintiff for insubordination. Plaintiff alleges such reasons are pretextual in that: (a) the reason Defendant gave or may give for the termination is factually false; and (b) to the extent his complaints and requests may have caused any workplace concerns, he was well within his rights to complain; and (c) had Defendant responded in a more constructive manner, it would have reduced or eliminated any workplace concerns.

## IV. DAMAGES

99. Mr. Chea alleges Defendant's actions and inactions have caused him various losses, injuries and other damages, including lost wages, lost benefits, financial stress, and emotional distress.

## V.  RELIEF REQUESTED

Accordingly, based on the above allegations, claims and damages, Plaintiff requests the following relief, specifically an Order and Judgment:

1. Declaring that Defendant discriminated against Mr. Chea on the basis of his race, color and national origin and gender, and retaliated against him because of his engaging in protected activity, in violation of Title VII;

2. Awarding Mr. Chea "make whole" relief, including awarding Mr. Chea lost wages, lost wage differential, and benefits, from the time Defendant terminated his employment until Mr. Chea secures comparable employment, or for a period of five years, whichever occurs first;

3. Awarding Mr. Chea his reasonable attorney's fees and costs;

4. Awarding Mr. Chea such other relief as may be just and equitable.

DATED this 12th day of August, 2021.

                                 */s/ David J. Holdsworth*
                                 David J.  Holdsworth
                                 *Attorney for Plaintiff*

## VERIFICATION

Hoeun Chea, being first duly sworn, upon his oath, deposes and says that he is the Plaintiff in the above-entitled action, that he helped prepare and has read the foregoing VERIFIED COMPLAINT and understands the contents thereof, and the statements made therein are true to the best of his knowledge and recollection.

                                            _/s/ Hoeun Chea_____
                                            Hoeun Chea

SUBSCRIBED AND SWORN to before me, a Notary Public, this ____ day of _____, 20___.

                                            _____
                                            NOTARY PUBLIC

MY COMMISSION EXPIRES:        RESIDING AT: _____

                                               _____