IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF UTAH

| | |
|---|---|
| HOEUN CHEA,<br><br>　　　　　　　Plaintiff,<br><br>v.<br><br>IHC HEALTH SERVICES, INC. dba INTERMOUNTAIN HEALTHCARE,<br><br>　　　　　　　Defendant. | MEMORANDUM DECISION AND ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT<br><br>Case No. 1:21-cv-00073-TS-DAO<br><br>District Judge Ted Stewart<br><br>Magistrate Judge Daphne A. Oberg |

This matter is before the Court on Defendant Intermountain Healthcare's ("IHC") Motion for Summary Judgment.[1] For the reasons discussed below, the Court will grant the Motion.

I. BACKGROUND

IHC employed Hoeun Chea as a Material Handler from November 2015 to December 2019.[2] Mr. Chea worked the evening shift at IHC's Supply Chain Center ("SCC"), where he used a forklift to transport large items and supplies throughout the warehouse, a process referred to as "picking."[3] On November 14, 2019, Joseph Michael Brinkerhoff ("Brinkerhoff"), Mr. Chea's immediate supervisor, and Stephanie McEwen ("McEwen"), the Human Resource professional assigned to the SCC, held a meeting with Mr. Chea to discuss "complaints about Mr. Chea engaging in inappropriate conduct towards his coworkers."[4] At this meeting, Brinkerhoff and

---

[1] Docket No. 17.

[2] Docket No. 9 ¶ 11; Docket No. 17 ¶ 1.

[3] Docket No. 17 ¶ 2.

[4] *Id.* ¶¶ 4–5.

McEwen suspended Mr. Chea for an incident that happened six months earlier,[5] in which Mr. Chea used his forklift to block his coworkers into an aisle where they had been "just talking for several minutes."[6] In the meeting with Brinkerhoff and McEwen, Mr. Chea complained about a coworker, calling the coworker "lazy and old,"[7] and admitted to a practice called "cherry picking," in which a Materials Handler disregards the assigned picking order and "selects easier or preferred tasks, which leaves more time consuming or difficult tasks for other coworkers."[8]

After the meeting, McEwen escalated Mr. Chea's situation to Gordon Slade ("Slade"), the Senior Director of Supply Chain Logistics at IHC, for further investigation.[9] Slade alleges that several coworkers came forward with "additional and serious concerns about Mr. Chea's behavior."[10] Slade met with Mr. Chea on December 5, 2019, and concluded that "Mr. Chea posed a potential threat to his coworkers' safety."[11] IHC terminated Mr. Chea's employment on December 6, 2019, for allegedly "demonstrating inappropriate behaviors toward his coworkers."[12] Mr. Chea denies the allegations of misconduct and appealed the decision "through three levels of internal review by individuals who did not supervise Mr. Chea directly and were not involved in his suspension or termination."[13] The reviewers at each level of appeal upheld Mr. Chea's termination.[14]

---

[5] Docket No. 9 ¶¶ 38–39.
[6] Docket No. 21 ¶ 6.
[7] *Id.* ¶ 7.
[8] *Id.* ¶ 8.
[9] *Id.* ¶ 11.
[10] *Id.* ¶ 15.
[11] Docket No. 17-1 Exhibit C ¶¶ 17, 21.
[12] Docket No 21 ¶ 32.
[13] *Id.* ¶ 33.
[14] *Id.*

Mr. Chea submitted a Charge of Discrimination[15] to the Utah Labor Commission and the U.S. Equal Employment Opportunity Commission ("EEOC") on September 30, 2020, alleging that the "Defendant had discriminated against him based on his race, color, national origin, and sex, and had unlawfully retaliated against him."[16] Mr. Chea alleges Brinkerhoff routinely treated Plaintiff differently than his white, American, and female co-workers, which preference culminated when Brinkerhoff stepped in to convince McEwan to suspend Mr. Chea on November 14, 2020.[17] The EEOC issued Plaintiff a Notice of Right to Sue on February 17, 2021, and Plaintiff filed his Complaint on May 18, 2021.[18]

## II.  SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[19] In considering whether a genuine dispute of material fact exists, the Court determines whether a reasonable jury could return a verdict for the nonmoving party in the face of all the evidence presented.[20] The Court is required to construe all facts and reasonable inferences in the light most favorable to the nonmoving party.[21]

---

[15] Docket No. 1-1.

[16] Docket No. 9 ¶ 3.

[17] Docket No. 21 at 23–25.

[18] Docket No. 1. Plaintiff filed his First Amended Complaint on August 12, 2021.

[19] Fed. R. Civ. P. 56(a).

[20] *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986); *Clifton v. Craig*, 924 F.2d 182, 183 (10th Cir. 1991).

[21] *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Wright v. Sw. Bell Tel. Co.*, 925 F.2d 1288, 1292 (10th Cir. 1991).

III. DISCUSSION

Defendant IHC seeks summary judgment on Plaintiff's claims of race, national origin, color, and gender discrimination, and retaliation for reporting the alleged discrimination to his supervisors. Plaintiff may establish these claims through direct or circumstantial evidence.[22] Where, as here, a plaintiff relies on circumstantial evidence, courts use the burden-shifting framework set out in *McDonnell Douglas Corp. v. Green*[23] to analyze discrimination and retaliation claims at summary judgment.[24] Under this framework, the plaintiff has the initial burden of establishing a prima facie case of discrimination or retaliation.[25] If the plaintiff establishes a prima facie case, the defendant has the burden to articulate "a legitimate, nondiscriminatory reason" for the action.[26] The plaintiff then has an opportunity to show, by a preponderance of the evidence, that the reasons the defendant gave were pretext for discrimination or retaliation.[27]

A. RACIAL, ETHNIC, AND COLOR-BASED DISCRIMINATION

Plaintiff's first claim asserts that IHC subjected him to disparate treatment on the basis of his race, skin color, and national origin, leading to his suspension and termination. Title VII prohibits an employer from discriminating against any individual because of "race, color, religion,

---

[22] *Riggs v. AirTran Airways, Inc.*, 497 F.3d 1108, 1114 (10th Cir. 2007); *Hansen v. SkyWest Airlines*, 844 F.3d 914, 925 (10th Cir. 2016).

[23] 411 U.S. 792 (1973).

[24] *Fye v. Okla. Corp. Comm'n*, 516 F.3d 1217, 1225 (10th Cir. 2008).

[25] *E.E.O.C. v. C.R. England, Inc.*, 644 F.3d 1028, 1038 (10th Cir. 2011) (citing *McDonnell Douglas*, 411 U.S. at 802); *Stover v. Martinez*, 382 F.3d 1064, 1070–71 (10th Cir. 2004) (citation omitted).

[26] *C.R. England, Inc.*, 644 F.3d at 1038; *Stover*, 382 F.3d at 1071.

[27] *C.R. England, Inc.*, 644 F.3d at 1038; *Stover*, 382 F.3d at 1071.

sex, or national origin."[28] To make a prima facie case of discrimination, "a plaintiff must demonstrate (1) he was a member of a protected class; (2) he was qualified and satisfactorily performing his job; and (3) he was terminated under circumstances giving rise to an inference of discrimination."[29] "The critical prima facie inquiry in all cases is whether the plaintiff has demonstrated that the adverse employment action occurred under circumstances which give rise to an inference of unlawful discrimination."[30] "Courts have enumerated a variety of circumstances that can give rise to an inference of discriminatory motive, including: actions or remarks made by decisionmakers that could be viewed as reflecting a discriminatory animus . . . , preferential treatment given to employees outside the protected class . . . or, more generally, upon the timing or sequence of events leading to plaintiff's termination."[31]

IHC argues that Mr. Chea fails to present a prima facie case for his termination because there is no "nexus" between "Gordon Slade . . . and the discriminatory conduct [Mr. Chea] alleges."[32] The Court agrees. Mr. Chea alleges no discriminatory actions, remarks, or preferential treatment by Slade, the ultimate decisionmaker in his termination. This includes a lack of factual allegations for a cat's paw theory of discrimination. A cat's paw theory applies if "a final decisionmaker fires an employee based on 'uncritical reliance' on facts provided by a biased subordinate."[33] In his statement, Slade asserts that he planned to "bring Mr. Chea back to work

---

[28] 42 U.S.C. § 2000e-2(a)(1).

[29] *Barlow v. C.R. England, Inc.*, 703 F.3d 497, 505 (10th Cir. 2012) (quoting *Salguero v. City of Clovis*, 366 F.3d 1168, 1175 (10th Cir. 2004)).

[30] *Id.* (quoting *Plotke v. White*, 405 F.3d 1092, 1100 (10th Cir. 2005)).

[31] *Plotke*, 405 F.3d at 1101 (citing *Chertkova v. Conn. Gen. Life Ins. Co.*, 92 F.3d 81, 91 (2d Cir. 1996) (gathering cases)).

[32] Docket No. 17 at 11, 15.

[33] *Singh v. Cordle*, 936 F.3d 1022, 1038 (10th Cir. 2019) (citing *Lobato v. N.M. Env't Dep't*, 733 F.3d 1283, 1294 (10th Cir. 2013)).

with a written warning for disrespectful behavior" until several of Mr. Chea's coworkers approached him "with additional and serious concerns about his conduct."[34] Slade's decision to terminate Plaintiff was based on first-hand interviews with Mr. Chea's coworkers and was upheld by three levels of internal reviewers who did not supervise Mr. Chea and were not involved in his termination.[35] The causal chain of biased behavior imputed to the decisionmaker is generally broken when someone "higher up in the decision-making process . . . independently investigate[s] the grounds for dismissal."[36] Slade's investigation and other reviews of Mr. Chea's termination demonstrate independence from potential bias by Mr. Chea's immediate supervisor.

Mr. Chea does not set forth any factual allegations upon which this Court may infer that his termination was a result of discrimination. Therefore, the Court finds that Mr. Chea fails to establish a prima facie case of discrimination concerning his termination.

However, Mr. Chea alleges sufficient facts to establish a prima facie case that his suspension, initiated and encouraged by Brinkerhoff, gives rise to an inference of discrimination. Mr. Chea alleges that Brinkerhoff, his immediate supervisor, routinely warned him about talking during his shift but "did not warn or discipline other Caucasian, white and American [] employees for talking too much with each other."[37] Mr. Chea also alleges that, on at least two occasions, Brinkerhoff praised the performance of his "Caucasian, white and American" coworkers during a work "huddle," despite Plaintiff outperforming his coworkers on those shifts.[38] These comments

---

[34] Docket No. 17-1 Exhibit C ¶¶ 11–12.
[35] Docket No. 21 ¶ 33.
[36] *Singh*, 935 F.3d at 1039.
[37] Docket No. 21 at 23–24.
[38] *Id.* at 24.

and actions, based on Plaintiff's vigilant observations of his supervisor,[39] could demonstrate preferential treatment given to employees outside the protected class and justify a finding of prima facie discrimination concerning Mr. Chea's suspension.

The burden then shifts to Defendant to provide a legitimate, nondiscriminatory reason for the suspension. IHC has identified numerous such reasons for suspending Mr. Chea, based on his treatment of his coworkers. Brinkerhoff and McEwan initiated a meeting with Plaintiff on November 14, 2019, to discuss "complaints about Mr. Chea engaging in inappropriate conduct towards his coworkers."[40] During the meeting, Mr. Chea expressed concerns about sexually explicit comments directed at him by a coworker, but in so doing, called the coworker "lazy and old" and stated he knew which coworkers were "against him."[41] McEwan cited these comments from Mr. Chea and the incident with the forklift in her decision to suspend him and further investigate his workplace behavior.[42]

In his response, Mr. Chea puts forward several rhetorical questions and conclusory statements, but provides no evidence that IHC's decision to suspend him was pretextual. Based on the foregoing, the Court finds that Plaintiff has failed to show that Defendant's rationale for his suspension was pretextual.

Therefore, the Court grants summary judgment to Defendant IHC on Plaintiff's Title VII claim for racial, ethnic, and color-based discrimination, both for his suspension and termination.

---

[39] Docket No. 17-1 at 66:10–67:12.

[40] Docket No. 21 ¶ 4.

[41] *Id.* ¶ 7.

[42] *Id.* ¶ 11.

7

B.  GENDER DISCRIMINATION

Plaintiff's second claim asserts reverse sex discrimination and sexual harassment in a hostile work environment under Title VII.[43] Mr. Chea "has decided not to challenge IHC's argument as to his claim of gender discrimination,"[44] which entitles Defendant to summary judgment on this claim. The Court commends Plaintiff and his counsel for their professional candor in conceding this claim.

C.  RETALIATION

Plaintiff's third claim asserts that he engaged in protected activity when he reported sexual harassment by his coworkers to his supervisors, and argues he was terminated in retaliation for this protected activity. The plaintiff must establish a prima facie case of retaliation by showing "(1) he engaged in protected opposition to discrimination; (2) he suffered an adverse employment action; and (3) there is a causal connection between the protected activity and the adverse employment action."[45]

"The causal-connection element of a prima facie retaliation claim requires the employee to show that the employer's motive for taking adverse action was its desire to retaliate for the protected activity."[46] "A retaliatory motive may be inferred when an adverse action closely follows protected activity. However, unless the termination is very closely connected in time to

---

[43] Docket No. 9 at 13–16.

[44] Docket No. 21 at 30.

[45] *O'Neal v. Ferguson Constr. Co.*, 237 F.3d 1248, 1252 (10th Cir. 2001) (citation omitted).

[46] *Wells v. Colo. Dep't of Transp.*, 325 F.3d 1205, 1218 (10th Cir. 2003).

the protected activity, the plaintiff must rely on additional evidence beyond temporal proximity to establish causation."[47]

Mr. Chea claims to have verbally complained to supervisors of disparate treatment on many occasions. He alleges he was not allowed to arrive late to work for school or childcare-related reasons, despite management affording his white, American coworkers that privilege.[48] He alleges he was reprimanded for "cherry picking" his assignments, while his white, American coworkers were not disciplined for the same behavior.[49] Plaintiff does not situate these complaints in temporal proximity to his suspension or termination, therefore the Court can find no causal link between these alleged complaints and any adverse employment action.

Plaintiff's complaint of workplace sexual harassment is the only evidence of protected activity he situates close in time to his suspension and termination. In early 2019, Mr. Chea complained to his immediate supervisor about his coworker's sexually explicit comments to him, regarding his horoscope sign.[50] Mr. Chea renewed this complaint against his coworker in the November 14, 2019 meeting with McEwen and Brinkerhoff. After the November 14 meeting and after his suspension, Mr. Chea submitted a formal, written complaint to IHC, detailing the sexually explicit remarks his coworker had made to him.[51]

With the facts Plaintiff alleges, he fails to demonstrate a causal connection between this protected activity and his suspension or termination. First, Plaintiff lodged his sexual harassment complaint more than six months before being suspended, and his coworker was disciplined by

---

[47] *Piercy v. Maketa*, 480 F.3d 1192, 1198 (10th Cir. 2007) (quoting *Anderson v. Coors Brewing Co.*, 181 F.3d 1171, 1179 (10th Cir. 1999)).

[48] Docket No. 17-1 at 161:4–18, 163:22–164:13.

[49] *Id.* at 65:2–71:19.

[50] *Id.* at 164:14–165:23.

[51] Docket No. 21-1 at 78:15–81:9.

9

IHC at that time. Second, Plaintiff was initially called into the meeting with Brinkerhoff and McEwan to discuss his alleged workplace misconduct. Third, Plaintiff formally renewed his sexual harassment complaint *after* his suspension. And fourth, as discussed above, Plaintiff was ultimately terminated for his inappropriate treatment of his coworkers.

Therefore, the Court grants summary judgment to Defendant IHC on Plaintiff's retaliation claim.

## IV. CONCLUSION

Accordingly, it is

ORDERED that Defendant's Motion for Summary Judgment (Docket No. 17) is GRANTED.

Dated January 3, 2023.

BY THE COURT

_____
Ted Stewart
United States District Judge