FILED
United States Court of Appeals
Tenth Circuit

October 16, 2023

Christopher M. Wolpert
Clerk of Court

UNITED STATES COURT OF APPEALS

FOR THE TENTH CIRCUIT

_____

HOEUN CHEA,

    Plaintiff - Appellant,

v.

IHC HEALTH SERVICES, INC.,
d/b/a Intermountain Healthcare,

    Defendant - Appellee.

No. 23-4014
(D.C. No. 1:21-CV-00073-TS)
(D. Utah)

_____

ORDER AND JUDGMENT[*]
_____

Before **TYMKOVICH**, **EID**, and **CARSON**, Circuit Judges.
_____

Hoeun Chea appeals from the district court's grant of summary judgment in favor of his former employer, IHC Health Services, in his suit alleging employment discrimination and retaliation based on his race, color, and national origin. Exercising jurisdiction under 28 U.S.C. § 1291, we affirm.

---

[*] After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist in the determination of this appeal. *See* Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). The case is therefore ordered submitted without oral argument. This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

## I.  BACKGROUND

From November 2015 to December 2019, Chea worked as a bulk materials handler at IHC's warehouse in Midvale, Utah.  His job involved operating a forklift to collect and move large items and bulk supplies within the warehouse, following an assigned "picking" order.

During a shift in April or May of 2019, two of Chea's coworkers were talking and partially blocking an aisle of the warehouse with their forklifts.  Chea became annoyed that they were in the way and used his own forklift to block them into the aisle.  Chea's immediate supervisor, Mike Brinkerhoff, discussed the forklift incident with him not long after it happened.  Brinkerhoff told Chea not to block others with his forklift again but did not otherwise discipline him.  Around the same time, Chea alleges he complained to Brinkerhoff that one of the coworkers involved in the forklift incident had made sexually explicit comments to him related to his zodiac sign.

On November 14, 2019, Brinkerhoff and Stephanie McEwen, an IHC human resources partner, held a meeting with Chea regarding complaints that Chea had acted unprofessionally toward his coworkers.  During the meeting, Chea: (1) confirmed he had blocked two coworkers into an aisle of the warehouse with a forklift; (2) referred to one of the coworkers involved in the forklift incident as "lazy and old," Aplt. App. at 190 (internal quotation marks omitted); (3) admitted to disregarding the assigned picking order to select preferred tasks (a forbidden practice called "cherry picking"); (4) stated he "knew who was against him," *id*. (internal

2

quotation marks omitted); and (5) complained about his coworker's sexual zodiac comments. At the end of the meeting, Brinkerhoff suspended Chea. Following the meeting, McEwen escalated the matter to Gordon Slade, IHC's Senior Director of Supply Chain Logistics; Slade is several levels of management above Brinkerhoff.

On November 19, Chea submitted a formal, written complaint with IHC about his coworker's sexually explicit remarks. Thereafter, McEwen met with the coworker, who confirmed that she had made the sexual zodiac comments to Chea several months prior. Following the coworker's admission, McEwen verbally coached her that at work, "no future conversation should occur with any comments of a sexual nature." *Id.* at 163.

During Chea's suspension, Slade led an investigation into Chea's conduct. On November 22, based on the investigation, Slade decided to bring Chea "back to work with a written warning for disrespectful behavior." *Id.* at 171. But Slade asserted that before he notified Chea of his decision, several of Chea's coworkers "approached [Slade], unsolicited, with additional and serious concerns about [Chea's] conduct." *Id.* For example, Slade learned that after Chea was suspended, he texted a coworker that he was keeping a list of the coworkers who snitched on him. And Slade was particularly concerned about reports he found credible "from multiple employees that Mr. Chea had at one point brought a firearm to the [warehouse] and stored it in his locker." *Id.* at 172.

On December 5, Slade and McEwen held a meeting with Chea regarding his coworkers' additional complaints. During the meeting, Chea denied bringing a gun

into the IHC warehouse, but admitted that he sold a gun to a coworker near the warehouse property prior to a shift. After the meeting, Chea commented to Slade that he did not want people to see him in the building because they would assume he "might shoot up the place." *Id.* (internal quotation marks omitted). Slade concluded that "Chea posed a potential threat to his coworkers' safety," and decided to terminate his employment. *Id.*

On December 6, IHC terminated Chea's employment for "demonstrating inappropriate behaviors directed toward his coworkers." *Id.* at 138. Chea appealed his termination through three levels of IHC's internal review. The reviewers at each level of the internal appeal never directly supervised Chea and were not involved in his suspension or termination from IHC. All three upheld his termination.

Chea, who is Southeast Asian and originally from Cambodia, then sued IHC for race, color, sex, and national origin discrimination and retaliation under Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e-2(a)(1), e-3(a). After discovery and briefing, the district court granted IHC's motion for summary judgment on all claims.[1] This appeal followed.

## II. DISCUSSION

### A. Standard of Review

"We review a grant of summary judgment de novo, drawing all reasonable inferences and resolving all factual disputes in favor of the nonmoving party." *Birch*

---

[1] Chea did not oppose summary judgment on his sex discrimination claim. *See* Aplt. App. at 215.

4

*v. Polaris Indus., Inc.*, 812 F.3d 1238, 1251 (10th Cir. 2015) (internal quotation marks omitted). Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).

"A dispute is genuine if there is sufficient evidence so that a rational trier of fact could resolve the issue either way." *Throupe v. Univ. of Denver*, 988 F.3d 1243, 1250 (10th Cir. 2021) (internal quotation marks omitted). "A fact is material if, under the governing law, it could have an effect on the outcome of the lawsuit." *Jones v. Norton*, 809 F.3d 564, 573 (10th Cir. 2015) (internal quotation marks omitted). The movant is entitled to judgment as a matter of law "if the plaintiff fails to provide sufficient evidence supporting a necessary element of his claim." *Throupe*, 988 F.3d at 1250.

B. Title VII

Title VII proscribes employment discrimination on the basis of "race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1). Title VII also prohibits employers from retaliating against an employee "because the employee has opposed any practice made an unlawful employment practice by Title VII." *Delsa Brooke Sanderson v. Wyo. Highway Patrol*, 976 F.3d 1164, 1170 (10th Cir. 2020) (brackets and internal quotation marks omitted); § 2000e-3(a).

Chea presented only circumstantial evidence to oppose summary judgment on his discrimination and retaliation claims. Thus, we apply the three-part, burden-shifting framework from *McDonnell Douglas Corp. v. Green*, 411 U.S. 792,

802–04 (1973). *See Khalik v. United Air Lines*, 671 F.3d 1188, 1192 (10th Cir. 2012). Under this framework, a plaintiff must first establish a prima facie case of discrimination or retaliation. *Hiatt v. Colo. Seminary*, 858 F.3d 1307, 1316 (10th Cir. 2017). "The burden then shifts to the employer to articulate a legitimate, nondiscriminatory or nonretaliatory reason for the adverse action." *Id.* (brackets and internal quotation marks omitted). If the employer makes that showing, the burden shifts back to the plaintiff to show that the employer's proffered reason is pretext for discrimination or retaliation. *Id.*

**1. Discrimination Claim**

Chea argues that the district court erred in granting summary judgment on his claim that IHC violated Title VII by terminating his employment[2] based on his race, color, and national origin.

For a prima facie case of discrimination, Chea must show that "(1) [he] belongs to a protected class; (2) [he] suffered an adverse employment action; and (3) the adverse action occurred under circumstances giving rise to an inference of discrimination." *Luster v. Vilsack*, 667 F.3d 1089, 1095 (10th Cir. 2011).

---

[2] Scattered statements in the opening brief suggest Chea is also attempting to argue discrimination based on Brinkerhoff's decision to suspend him. The district court held that this claim failed under the third step of the *McDonnell Douglas* framework because Chea "provide[d] no evidence that IHC's decision to suspend him was pretextual." Aplt. App. at 301. However, Chea's opening brief fails to challenge that determination and does not otherwise adequately raise or pursue a discrimination argument related to his suspension. Accordingly, we decline to consider it. *See Bronson v. Swensen*, 500 F.3d 1099, 1104 (10th Cir. 2007) ("[W]e routinely have declined to consider arguments that are not raised, or are inadequately presented, in an appellant's opening brief.").

The district court determined Chea did not satisfy the third element for a prima facie case of discrimination because he alleged "no discriminatory actions, remarks, or preferential treatment by Slade, the ultimate decisionmaker in his termination." Aplt. App. at 299. Chea argues the district court erred because the circumstances of his termination give rise to an inference of discrimination under a "cat's-paw" theory of liability.[3] We disagree and affirm the district court.

"In the employment discrimination context, 'cat's paw' refers to a situation in which a biased subordinate, who lacks decisionmaking power, uses the formal decisionmaker as a dupe in a deliberate scheme to trigger a discriminatory employment action." *EEOC v. BCI Coca-Cola Bottling Co.*, 450 F.3d 476, 484 (10th Cir. 2006). Under "the cat's-paw theory of liability," a plaintiff can "establish pretext even without evidence that the actual decisionmaker possessed an unlawful motive." *Singh v. Cordle*, 936 F.3d 1022, 1038 (10th Cir. 2019) (internal quotation marks omitted). To survive summary judgment under this framework, Chea must demonstrate a genuine issue of material fact exists that (1) a subordinate to the decisionmaker "took action motivated by discriminatory animus; (2) the subordinate intended the action to cause an adverse employment action[;] and (3) the

---

[3] Chea's brief cites no legal authority to support this argument. *See* Aplt. Opening Br. at 17–21. While we exercise our discretion to address Chea's cat's-paw argument, we note that an appellant's arguments "must contain . . . appellant's contentions and the reasons for them, with citations to the authorities and parts of the record on which the appellant relies." Fed. R. App. P. 28(a)(8)(A).

7

subordinate's actions proximately caused the intended adverse employment action." *Id.*

Chea contends Brinkerhoff was biased and that Brinkerhoff and McEwen "started the chain of events" that led to his termination by escalating the forklift incident to Slade six months after Brinkerhoff addressed it with Chea. Aplt. Opening Br. at 17. He further alleges an employee previously reported the gun incident to Brinkerhoff, but Brinkerhoff did nothing about it at the time and that "McEwen solicited reports of the gun incident" after learning Slade intended to bring Chea back to work. *Id.* at 17 n.1. Even assuming Chea provided sufficient evidence to satisfy the first two "cat's-paw" elements, he provided no evidence to show Brinkerhoff's actions proximately caused Slade to terminate his employment.

"One way an employer can break the causal chain between the subordinate's biased behavior and the adverse employment action is for another person or committee higher up in the decision-making process to independently investigate the grounds for dismissal." *Singh*, 936 F.3d at 1038 (internal quotation marks omitted). Such is the case here. Brinkerhoff was not involved with Slade's decision to terminate Chea's employment. And prior to terminating Chea's employment, Slade (who is several levels of management above Brinkerhoff) led an investigation into Chea's conduct, interviewed several of Chea's coworkers, and met with Chea directly regarding his coworkers' additional complaints.

An employer can also break the causal chain through a post-termination, independent review. *See id.* at 1039 (citing *Thomas v. Berry Plastics Corp.*, 803 F.3d

510, 517 (10th Cir. 2015)). Here, Chea appealed his termination through three levels of IHC's internal review. The reviewers at each level of the internal appeal never directly supervised Chea and were not involved in his suspension or termination from IHC, and all three reviewers upheld his termination.

Thus, although Brinkerhoff's suspension of Chea technically led Slade to investigate Chea's conduct, the evidence does not support a finding that Brinkerhoff proximately caused Chea's termination. Slade's independent decision and IHC's post-termination review broke any causal chain between Brinkerhoff's alleged bias and the termination of Chea's employment. We therefore conclude summary judgment was appropriate.

**2. Retaliation Claims**

Chea argues that the district court erred in granting summary judgment on his claims that he engaged in protected activity—by complaining about experiencing disparate treatment[4] and complaining about a coworker's sexually explicit comments—and that IHC violated Title VII by suspending him and then terminating his employment in retaliation for his protected activity.

For a prima facie case of retaliation, a plaintiff must show (1) he engaged in protected opposition to discrimination; (2) he suffered an adverse action that a

---

[4] Chea alleged his supervisors afforded his white, U.S.-born coworkers flexibility to show up late to work, to accommodate college classes or childcare needs, but did not afford him the same flexibility. He further alleged his supervisors repeatedly reprimanded him for "cherry picking" but never disciplined his white, U.S.-born coworkers for the same behavior. He claimed that he verbally complained to his supervisors about the alleged disparate treatment multiple times.

reasonable employee would have found material; and (3) there is a causal nexus between his protected activity and the employer's adverse action. *Khalik*, 671 F.3d at 1193.

Regarding his disparate-treatment claim, the district court determined Chea did not satisfy the third element, because he did not situate his disparate-treatment complaints in "temporal proximity to his suspension or termination." Aplt. App. at 303. We agree with the district court and note that, in addition to not providing a timeline of his disparate treatment complaints related to an adverse employment action, he did not provide any other evidence to establish causation. *See Piercy v. Maketa*, 480 F.3d 1192, 1198 (10th Cir. 2007) ("[U]nless the termination is *very closely* connected in time to the protected activity, the plaintiff must rely on additional evidence beyond temporal proximity to establish causation.").

The district court also determined that Chea failed to establish a causal nexus between his complaints about his coworker's sexually explicit comments to him related to his zodiac sign and his suspension and termination. We agree. The only causation evidence Chea offered in support of this claim was an asserted temporal relationship between his complaint and the adverse action. And the six-month lag between Chea's May 2019 verbal complaint to Brinkerhoff and his suspension is not close enough in time to establish causation. *See id.*; *Anderson v. Coors Brewing Co.*, 181 F.3d 1171, 1179 (10th Cir. 1999) (noting that where three months elapsed between the protected activity and the adverse employment action, "the plaintiff must rely on additional evidence beyond temporal proximity to establish causation").

Finally, Chea's reiteration of his complaint about the sexually explicit comment during the meeting that immediately preceded his suspension does not establish the requisite causal nexus because "the disciplinary process [was] already set in motion," *Morgan v. Hilti, Inc.*, 108 F.3d 1319, 1324 (10th Cir. 1997). Accordingly, summary judgment was appropriate.

### III. CONCLUSION

We affirm the district court's judgment.

Entered for the Court

Timothy M. Tymkovich
Circuit Judge

UNITED STATES COURT OF APPEALS FOR THE TENTH CIRCUIT
Byron White United States Courthouse
1823 Stout Street
Denver, Colorado 80257
(303) 844-3157
Clerk@ca10.uscourts.gov

Christopher M. Wolpert
Clerk of Court

Jane K. Castro
Chief Deputy Clerk

October 16, 2023

Mr. David J. Holdsworth
9125 South Monroe Plaza Way, Suite C
Sandy, UT 84070

**RE:** 23-4014, Chea v. IHC Health Services
Dist/Ag docket: 1:21-CV-00073-TS

Dear Counsel:

Enclosed is a copy of the order and judgment issued today in this matter. The court has entered judgment on the docket pursuant to Fed. R. App. P. Rule 36.

Pursuant to Fed. R. App. P. Rule 40(a)(1), any petition for rehearing must be filed within 14 days after entry of judgment. Please note, however, that if the appeal is a civil case in which the United States or its officer or agency is a party, any petition for rehearing must be filed within 45 days after entry of judgment. Parties should consult both the Federal Rules and local rules of this court with regard to applicable standards and requirements. In particular, petitions for rehearing may not exceed 3900 words or 15 pages in length, and no answer is permitted unless the court enters an order requiring a response. *See* Fed. R. App. P. Rules 35 and 40, and 10th Cir. R.35 and 40 for further information governing petitions for rehearing.

Please contact this office if you have questions.

Sincerely,

Christopher M. Wolpert
Clerk of Court

cc:     David C. Castleberry

CMW/sls